United States Court of Appeals,

Eleventh Circuit.

No. 96-6635.

James D. MASSEY;  Robert A. Massey, Plaintiffs-Appellees,

v.

CONGRESS LIFE INSURANCE COMPANY;  Insurers Administrative Corporation, Defendants-Appellants.

July 10, 1997.

Appeal from the United States District Court for the Northern District of Alabama.  (No. CV-95-G-1405-S), J. Foy Guin, Jr., Judge.

Before BLACK, Circuit Judge, and FAY and ALARCON[*], Senior Circuit Judges.

BLACK, Circuit Judge:

The present case arises out of the termination of health insurance policies held by James D. Massey and Robert A. Massey for failure to pay the premiums prior to the due date or expiration of the grace period.  The insurance policies at issue were underwritten by Congress Life Insurance Company (Congress) and administered by Insurers Administrative Corporation (IAC).  After termination of the policies, the Masseys sued Congress and IAC for breach of contract, fraud, bad faith, outrage, and negligence in the United States District Court for the Northern District of Alabama.  The district court granted in part a motion by Congress and IAC for summary judgment, but also granted summary judgment *sua sponte* in favor of the Masseys on a breach of contract claim.  To remedy the perceived breach, the court awarded the Masseys injunctive relief, including immediate reinstatement of their policies.  Congress and IAC then took the instant interlocutory appeal wherein they contend that the district court erred by partially denying its motion for summary judgment and then granting summary judgment on the breach of contract claim to the Masseys.  We reverse because the district court failed to afford adequate notice prior to the *sua sponte* grant of summary judgment.

---

[*]Honorable Arthur L. Alarcon, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

## I. *BACKGROUND*

James and Robert Massey are brothers and the sole shareholders in Massey Amoco, Inc. (Massey Amoco), the corporate owner of a service station in Birmingham, Alabama. In late 1992 or early 1993, the Masseys explored the possibility of obtaining health insurance for themselves and two full-time employees. Subsequently, all four individuals elected to purchase health insurance policies underwritten by Appellant Congress and administered by Appellant IAC.

As administrator of the policies, IAC handled collection of premiums and processing of claims on behalf of Congress. On approximately October 15, 1994, in accordance with its standard practice, IAC mailed James and Robert Massey their monthly premium statements at the Massey Amoco service station. Each statement specified that payment of the monthly premium was due on November 1, 1994, and warned that "IF PREMIUMS ARE NOT RECEIVED WITHIN 31 DAYS OF THE DUE DATE, COVERAGE WILL CEASE AS OF THE DUE DATE FOR NON-PAYMENT OF PREMIUM." Massey Amoco failed to pay the monthly premiums on or before the November 1, 1994, due date and still had not paid those premiums when IAC mailed the December statements to policyholders on or about November 15, 1994.

In late November 1994, Massey Amoco received from IAC the premium statements for the month of December. The statements indicated that the premiums for the month of November were past due. Near the bottom of each statement, a delinquency notice appeared in bold type set off in an enclosed box. The notice stated that "THE PAST DUE AMOUNT MUST BE RECEIVED WITHIN 31 DAYS OF THE DUE DATE FOR THE MONTH IN WHICH IT WAS DUE TO AVOID LAPSE OF COVERAGE." The statement also contained the standard recitation that coverage under the policy would cease as of the due date unless premiums were received within 31 days of the due date. On December 9, 1994, IAC received a check from Massey Amoco purporting to pay the premiums that had been due November 1, 1994. The envelope containing the payment was postmarked December 5, 1994. Explaining that their insurance policies had lapsed on December 2, 1994, in accordance with the terms of their insurance certificates, IAC returned the check to the Masseys.

On June 2, 1995, the Masseys sued Congress and IAC in the United States District Court for the Northern District of Alabama. The complaint advanced state law causes of action for breach of contract, bad faith, fraud, outrage, and negligence. In its answer, Congress and IAC maintained that the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461, preempted the Masseys' claims. On February 27, 1996, Appellants Congress and IAC filed a motion for summary judgment arguing both ERISA preemption and, in the alternative, the merits of the Masseys' claims. In an order issued on May 29, 1996, the district court granted in part and denied in part Appellants' motion for summary judgment. After rejecting the ERISA preemption argument, the district court awarded Congress and IAC summary judgment on the outrage, negligence, and bad faith claims, but denied summary judgment on the breach of contract and fraud claims. In addition, although the Masseys had not moved for summary judgment, the district court granted them summary judgment *sua sponte* on their breach of contract claim. The court then awarded the Masseys injunctive relief for the perceived breach, ordering Congress and IAC to reinstate the Masseys' policies and to pay any insurance claims that had accrued since cancellation. In addition, the court enjoined Congress and IAC from canceling the medical policy of James Massey prior to the time "all of the benefits have been paid for his terminal renal disease" up to the limits of the policy. On June 24, 1996, Congress and IAC filed a notice of interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(1).

## II. *DISCUSSION*

### A. *Scope of Appellate Review.*

Section 1292(a)(1) confers upon courts of appeals jurisdiction over appeals from interlocutory district court orders "granting, continuing, modifying, refusing or dissolving injunctions." As a general rule, when an appeal is taken from the grant or denial of an injunction, the reviewing court will go no further into the merits than is necessary to decide the interlocutory appeal. *Callaway v. Block,* 763 F.2d 1283, 1287 n. 6 (11th Cir.1985). Courts have adopted this approach not out of jurisdictional necessity, but merely as a matter of sound judicial administration. *Id.* As we perceive no justification for departing from these principles of sound judicial administration in the instant case, we confine our analysis to the propriety of the district court's

breach of contract ruling, which constitutes the sole basis for the grant of injunctive relief.

B. *The District Court's Sua Sponte Grant of Summary Judgment in Favor of the Non-Moving Party.*

We initially consider the propriety of the district court's *sua sponte* grant of summary judgment in favor of the Masseys. The critical question is not whether the district court had the power to grant summary judgment *sua sponte* in favor of a nonmoving party. District courts unquestionably possess the power to trigger summary judgment on their own initiative. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *Bosarge v. United States Dep't of Educ.,* 5 F.3d 1414, 1416 n. 4 (11th Cir.1993), *cert. denied,* 512 U.S. 1226, 114 S.Ct. 2720, 129 L.Ed.2d 845 (1994); *Lindsey v. United States Bureau of Prisons,* 736 F.2d 1462, 1463 (11th Cir.), *vacated on other grounds,* 469 U.S. 1082, 105 S.Ct. 584, 83 L.Ed.2d 695 (1984); *accord Jardines Bacata, Ltd. v. Diaz-Marquez,* 878 F.2d 1555, 1560 (1st Cir.1989). At the same time, however, district courts must temper their exercise of that power by the need to ensure that the parties receive adequate notice that they must bring forward all of their evidence. *See Celotex Corp.,* 477 U.S. at 326, 106 S.Ct. at 2554. Accordingly, the central inquiry focuses upon whether the district court provided sufficient notice prior to any *sua sponte* award of summary judgment.

The restrictions upon the ability of the district court to award summary judgment *sua sponte* emanate from Rule 56 of the Federal Rules of Civil Procedure. The Rule provides that motions for summary judgment "shall be served at least 10 days before the time fixed for the hearing," and expressly allows nonmovants to "serve opposing affidavits" at any time prior to the day of the hearing. Fed.R.Civ.P. 56(c). We have recognized repeatedly that this notice provision is not an unimportant technicality, but a vital procedural safeguard. *National Fire Ins. v. Bartolazo,* 27 F.3d 518, 520 (11th Cir.1994); *Hanson v. Polk County Land, Inc.,* 608 F.2d 129, 131 (5th Cir.1979). Most notably, the notice provision ensures that litigants will have at least ten days in which to formulate and prepare their best opposition to an impending assault upon the continued viability of their claim or defense. *Stella v. Town of Tewksbury,* 4 F.3d 53, 55 (1st Cir.1993); *see Bartolazo,* 27 F.3d at 520 (stating that the notice requirement ensures an adequate opportunity for litigants to

prepare a reasoned, complete response to the motion before the court).

Consistent with the importance of the procedural protection afforded by Rule 56(c), courts have strictly enforced the requirement that a party threatened by summary judgment must receive notice and an opportunity to respond. *Bartolazo,* 27 F.3d at 520 ("[T]he 10-day advance notice requirement for *all* litigants is mandatory in this Circuit to satisfy the notice and hearing dictates of Rule 56."); *Milburn v. United States,* 734 F.2d 762, 765 (11th Cir.1984) ("This circuit strictly enforces the 10-day notice requirement for all litigants."); 11 James Wm. Moore, Moore's Federal Practice § 56.10[2][b] (3d ed. 1997) ("A court may not enter summary judgment sua sponte without providing a minimum of 10 days' notice to the parties as required by the Federal Rules of Civil Procedure or its own local rules."); *see also Lindsey,* 736 F.2d at 1463 ("Because Fed.R.Civ.P. 56 requires that the party threatened by summary judgment be given notice and opportunity to respond, courts must exercise great care to apprise the moving party that the court sua sponte is considering entering judgment against him."). The notice provisions retain their mandatory character even when the district court contemplates awarding summary judgment *sua sponte* against a party that itself had moved for summary judgment. *See Bartolazo,* 27 F.3d at 520; *accord Otis Elevator Co. v. George Washington Hotel Corp.,* 27 F.3d 903, 910 (3d Cir.1994). In other words, parties who move for summary judgment do not thereby waive their right to receive notice, and an adequate opportunity to respond should the court *sua sponte* elect to test the strength of the movant's case under the summary judgment standard. Congress and IAC therefore were entitled to an opportunity to marshal their strongest evidence and legal arguments in opposition to summary judgment. As the district court denied them that opportunity by failing to comply with the mandatory notice provisions of Rule 56, we conclude the award of summary judgment was procedurally improper.

The district court's reliance on *Black Warrior Electric Membership Corp. v. Mississippi Power Co.,* 413 F.2d 1221 (5th Cir.1969), as support for its decision to grant summary judgment *sua sponte* is misplaced. That decision has never been understood to confer upon a district court the power to grant summary judgment without affording the party against whom summary judgment is rendered a full and fair opportunity to meet the proposition that there is no genuine issue of material

fact to be tried. *See Pollock v. Birmingham Trust Nat'l Bank,* 650 F.2d 807, 810 (5th Cir. Unit B July 1981). Moreover, the former Fifth Circuit predicated its decision in *Black Warrior* upon the parties' acknowledgment that only a question of law remained in that case. *Black Warrior,* 413 F.2d at 1226. By contrast, the issues upon which the district court in the instant case granted summary judgment involved a question of fact. *See, e.g., Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 266 (9th Cir.1991) (noting that the existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person).

Equally unavailing is the Masseys reliance upon *Lindsey v. United States Bureau of Prisons,* 736 F.2d 1462 (11th Cir.), *vacated on other grounds,* 469 U.S. 1082, 105 S.Ct. 584, 83 L.Ed.2d 695 (1984), and *Bosarge v. United States Department of Education,* 5 F.3d 1414 (11th Cir.1993), *cert. denied,* 512 U.S. 1226, 114 S.Ct. 2720, 129 L.Ed.2d 845 (1994), as support for the district court's *sua sponte* grant of summary judgment. Those decisions merely endorse the unremarkable proposition that district courts possess the power to award summary judgment in favor of a nonmovant. *See Bosarge,* 5 F.3d at 1416 n. 4; *Lindsey,* 736 F.2d at 1463. Neither decision suggests, however, that the existence of this power entitles district courts to disregard the mandatory notice requirements imposed by the Federal Rules of Civil Procedure.

### III. *CONCLUSION*

In accordance with the foregoing, we conclude that the district court's *sua sponte* grant of summary judgment, without affording notice to Congress and IAC, contravenes both Rule 56 and Eleventh Circuit precedent. We therefore reverse that portion of the district court's order granting the Masseys' summary judgment on their breach of contract claim. In addition, we vacate the injunction issued by the district court because it rested entirely upon the inappropriate grant of summary judgment. We decline to address any other issues raised by the parties because the above disposition conclusively resolves all issues necessary to decide the interlocutory appeal. We remand the remainder of the case to the district court for further proceedings not inconsistent with this

opinion.[1]

REVERSED in part, VACATED in part, and REMANDED.

---

[1]We further note that on remand the district court must satisfy itself that it has jurisdiction over the present controversy. The parties represent that the district court had jurisdiction based upon diversity of citizenship. *See* Appellants' Brief at 1; Appellees' Brief at viii. For a federal court to have diversity jurisdiction, however, the plaintiff must allege a proper jurisdictional basis in the complaint. *Taylor v. Appleton,* 30 F.3d 1365, 1367 (11th Cir.1994). In particular, the plaintiff must allege that the plaintiff and defendants are citizens of different states and that the amount in controversy exceeds $50,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). Based upon our review of the complaint, we harbor serious doubts regarding the sufficiency of the Masseys' jurisdictional allegations.